**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **MOISETTE SWEAT,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-17-0756** |
| | ) | |
| **SUNTRUST BANK, N.A.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court is Defendant Old Line Bank's ("Defendant") Motion for Summary

Judgment ("Motion") (ECF No. 34) requesting summary judgment be entered against Moisette

Sweat, Terry Sweat, and Michael Wolff, Chapter 7 Trustee of the Bankruptcy Estate of

Sweatism, LLC (collectively "Plaintiffs"). The Court has reviewed Defendant's Motion, related

memoranda, and the applicable law. No hearing is deemed necessary. Local Rule 105.6 (D.

Md.). For the reasons set forth below, the Court **GRANTS** Defendant's Motion.

## I.    FACTUAL BACKGROUND

In attempting to pursue the opening and operation of a restaurant in July 2015, Mr. and Mrs.

Sweat sought to obtain financial backing in the form of a loan from Defendant. *Id.* at 160:6-

161:19. Prior to contacting Defendant in regards to a loan, Plaintiffs reached a financing

agreement with Wing Heaven Franchise Systems, LLC at an initial cost of $15,000, contracted

with a general contractor to restructure the restaurant space, liquidated their retirement accounts,

purchased a work vehicle, and executed a lease agreement for a space for the restaurant for

which they were paying rent. *Id.* at 46:11-21, 90:13-91:4, 102:11-16, 107:1-21, 120:3-18, 147:7-

148:16. As part of the lending process, Mr. and Mrs. Sweat engaged in numerous email

communications with Holley Zippi, a loan officer and vice president with Defendant, concerning the loan. Zippi Aff. at 2 (ECF No. 34-4). Defendant contends that on July 24, 2015, after Ms. Zippi's review of Plaintiffs' loan application, Plaintiffs loan application was denied, with Ms. Zippi informing Mr. Sweat of the denial by telephone. Defendant claims that it sent an adverse action notice to Plaintiffs. *Id.* at 2-3. In November 2015, Plaintiffs provided co-signor information to Defendant for further consideration of the loan application. Dep. of M. Sweat, at 168:16-169:13. On November 30, 2015, an adverse action notice was sent, addressed to Plaintiffs but with an incorrect address. Zippi Aff. at 3.

On January 19, 2017, Plaintiffs filed suit against Defendant alleging two counts: first, a claim of violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*., by Defendant in failing to provide adverse action notices; and second, a claim of negligence by Defendant in failing to review Plaintiffs' loan application and co-signor information. Am. Compl. 5-6.

## II.   STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is deemed genuine only if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is deemed material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Supreme Court has explained that the burden of proof lies with the movant to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to show an absence of evidence in the record as to an essential element of the claim or to present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A court reviewing a motion for summary judgment must view the evidence in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

**A. Assuming *arguendo* the presence of a technical violation of the ECOA, Plaintiffs are unable to prove actual damages resulting from said violation.**

1. The Notice Requirements

Plaintiffs claim that Defendant failed to provide an adverse action notice as required by the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*.  Am. Compl. 5.  The ECOA, originally enacted to protect against discrimination in lending practices, provides that "it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age."[1]  15 U.S.C. § 1691(a)(1).  The ECOA and its accompanying Regulation B, 12 C.F.R. § 202, contain notification requirements mandating "a creditor to provide written notice of any adverse action taken in connection with an application for credit within a certain timeframe and pursuant to certain content guidelines."  *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. Ac. No. DKC-10-3517, 2012 WL 3985285, at *4 (D. Md. Sept. 7, 2012) (citing 15 U.S.C. § 1691(d)).  Regulation B further requires that "[a] creditor shall notify an applicant of action taken within: 30 days after receiving a completed application concerning the creditor's

---

[1] Plaintiffs do not allege discrimination on Defendant's behalf; instead, the allegations arise out of technical violations of the ECOA notice requirements, as set forth below.

approval of, counteroffer to, or adverse action on the application . . .".  12 C.F.R. §

202.9(a)(1)(i).  Regulation B further mandates that

> [a] notification given to an applicant when adverse action is taken shall be in
> writing and shall contain [1] a statement of the action taken; [2] the name and
> address of the creditor; [3] a statement of the provisions of § 701(a) of the Act; [4]
> the name and address of the federal agency that administers compliance with
> respect to the creditor; and either [5]: [(i)] a statement of specific reasons for the
> action taken; or [(ii)] a disclosure of the applicant's right to a statement of specific
> reasons within 30 days, if the statement is requested within 60 days of the
> creditor's notification.

*Id.* at § 202.9(a)(2).  Indeed, "when a creditor fails to comply with these requirements, it is in

violation of the ECOA, regardless of whether it engaged in any prohibited discrimination."

*Coulibaly*, 2012 WL 3985285, at *4 (citations omitted).

Plaintiffs allege that Defendant failed to provide proper notification of adverse action on

Plaintiffs' small business loan application.  Pls.' Am. Compl. 5.  Specifically, Plaintiffs argue

that (1) the November 2015 notice was sent to the wrong address and did not contain information

required by the ECOA, (2) the wrong address being listed on the notice constituted negligence on

Defendant's behalf, and (3) Plaintiffs suffered actual damages that were proximately caused by

Defendant's violations.[2]

In addressing Plaintiffs' first argument concerning the information needed in an adverse

notice notification, the Court is not convinced that Defendant erred in meeting the requirements

set forth in the ECOA and accompanying Regulations B.  Plaintiffs assert that both notices are

deficient in failing to provide specific reasons for why an adverse decision was made (ECF No.

36-1, p. 3 (stating that an adverse action notice "must state the specific reasons why the action

was taken and must include certain language and disclosures. [15 U.S.C. § 1691(d)(2)]; 12

---

[2] Plaintiffs also attempts to claim that even assuming Plaintiffs received the July 2015 notice, the notice itself lacked
the information required by the ECOA.  ECF No. 36-1, p. 3-4.  However, as addressed below, the Court is not
convinced that the July 2015 notice was deficient in any way.  As such, Plaintiffs' admission that the July 2015
notice was sent makes clear that their dispute relates almost entirely to the November 2015 notice.

C.F.R. § 202.9(a) and (b)")).  However, Plaintiffs fail to recognize that Regulation B mandates

that an adverse action notice must provide "a statement of specific reasons for the action taken;

*or* . . . a disclosure of the applicant's right to a statement of specific reasons within 30 days, if the

statement is requested within 60 days of the creditor's notification."  12 C.F.R. § 202.9(a)(2)(ii)

(emphasis added).  In reviewing copies of the adverse notices allegedly provided, the Court is

persuaded that both notices provide all of the information required by Regulation B.  *See* ECF

No. 34-11; ECF No. 34-15.  As such, the Court must look to Plaintiffs' secondary claims of lack

of receipt and whether the notices were improperly addressed.

Plaintiffs allege that the July 2015 adverse action notification was deficient due to lack of

receipt, with the November 2015 notice admittedly having been sent to the wrong address.

However, having found that the notice allegedly sent contained the requisite information

required by the ECOA, this case closely resembles the facts set forth in *Coulibaly*.  There, this

Court found that despite admitted violations of the ECOA by defendant, summary judgment was

warranted due to plaintiffs' failure "to prove actual damages with the requisite degree of

specificity."  2012 WL 3985285, at *6.  Assuming *arguendo* that Defendant had technical

violations of the ECOA, when viewing the evidence in a light most favorable to the non-moving

party the Court is left to determine whether Plaintiffs can meet their burden in proving actual and

punitive damages, and whether the fee-shifting provision is applicable.

2.  Actual Damages

The ECOA provides that "any creditor who fails to comply with any requirement

imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages

sustained by such applicant."  15 U.S.C. § 1691e(a).  "The actual damages recoverable under the

ECOA 'may include out-of-pocket monetary losses, injury to credit reputation, and mental

anguish, humiliation or embarrassment. . . . An injury resulting from an ECOA violation is not to be presumed, however; instead, actual damages 'must be specifically proven.'" *Coulibaly*, 2013 WL 3985285, at *6 (citing *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277-78 (9th Cir. 1982)). In their complaint and memorandum in opposition to Defendant's Motion, Plaintiffs assert that they have actual damages in the form of "lost revenue between August 2015 and February 2016." Am. Compl. 5 (ECF No. 5, p. 5); ECF No. 36-1, p. 7.[3] Indeed, Plaintiffs state that but-for Defendant's violations of the ECOA, Plaintiffs would have sought other financing, which would have resulted in the opening of the restaurant on an earlier date than realized. *Id.* at 5. This line of reasoning is purely speculative and does not provide the Court with any evidence of actual damages incurred. "Even when viewed in a light most favorable to Plaintiffs, this evidence does not specifically prove out-of-pocket losses during the timeframe relevant . . . because it fails to establish the requisite causal link between [Defendant's] *delay* in responding to [Plaintiffs' application] and Plaintiffs' purported injury." *Coulibaly*, 2012 WL 3985285, at *7. Likewise, Plaintiffs do not dispute that virtually all of its claimed damages were obligations incurred long before Defendant was involved. ECF No. 34-1, p. 8 (noting that Plaintiffs had rent obligations three months prior to contacting Defendant); *Id.* at 9 ("It is undisputed that Plaintiffs were in an ongoing dispute with the general contractor that began prior to Plaintiffs' initial contact with Old Line."). Here, Plaintiffs are unable to provide the Court with sufficient evidence to meet their burden. Accordingly, summary judgment is appropriate and will be granted in Defendant's favor as to the claim for actual damages.

     3. Punitive Damages

---

[3] The Amended Complaint seeks monetary damages, punitive damages, reasonable attorneys fees and other relief as the Court deems proper.

Defendant is likewise entitled to summary judgment on Plaintiffs' claim for punitive damages. The ECOA provides that "[a]ny creditor . . . who fails to comply with any requirement under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000." 15 U.S.C. § 1691e(b). "Despite the use of "shall," Sections 1691e(b) 'does not require an award of punitive damages for every violation of the Act." *Coulibaly*, 2012 WL 3985285, at *7 (citing *Anderson*, 666 F.2d at 1278). "Rather, punitive damages are appropriate 'if the defendant's conduct was wanton, malicious, or oppressive, or if the defendant acted in reckless disregard of the law.'" *Id.* (citing *Reynolds v. Reliable Transmissions, Inc.*, No. 09-238, 2010 WL 2640065, at *4 (E.D. Va. June 29, 2010)). In determining the amount of punitive damages to award, the ECOA instructs courts to consider, "among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." 15 U.S.C. 1691e(b).

This Court is not convinced that the factors established by the ECOA weigh in favor of Plaintiffs. Indeed, Plaintiffs do not provide any evidence to establish the frequency and persistence of failure by Defendant, nor do they allege that any persons suffered adverse effects because of Defendant's violations. Instead, Plaintiffs rely on the amount of their claimed damages, the resources of Defendant as a banking organization, and their belief that Defendant's violations were intentional. ECF No. 36-1, p. 9. As addressed above, Plaintiffs were unable to show actual damages and "it cannot be concluded that a discretionary award of punitive damages is warranted on [Defendant's resources] alone." *Coulibaly*, 2012 WL 3985285, at *9. Thus, the Court is left to address Plaintiffs' allegation that Defendant's "failure of compliance" was

intentional. Plaintiffs rely almost entirely on their claim that the July and November notices lacked the requisite information, with a brief reference to the November denial being sent to the wrong address. Having addressed that the notices contained the requisite information, the Court is not persuaded by Plaintiffs' unsupported allegation that Defendant's clerical error regarding Plaintiffs' address was intentional. Indeed, Defendant's Motion and supporting affidavit state that Ms. Zippi spoke by telephone on July 24, 2015 with Mr. Sweat, informing him of the adverse notice. Plaintiffs' deposition testimony from Mrs. Sweat does not refute this evidence. Since it is unrebutted, the Court can accept it as true. This verbal notification does not support the argument for malicious conduct rising to a level justifying punitive damages.

The ECOA provides for an award of "the costs of the action, along with a reasonable attorney's fee as determined by the court" "[i]n the case of any successful action" for actual damages, punitive damages, or equitable and declaratory relief. 15 U.S.C. § 1691e(d). In accordance with the foregoing findings, neither actual nor punitive damages can be awarded, and Plaintiffs do not seek equitable and declaratory relief. As such, the Court is persuaded that the fee shifting provision of the ECOA is inapplicable.

Because neither actual nor punitive damages can be awarded, and the fee shifting provision is inapplicable, the Court finds summary judgment appropriate. The Court hereby grants Defendant's Motion as to Plaintiffs' first claim.

**B. There is no genuine issue for a trier of fact to determine Defendant's liability because Plaintiffs are unable to provide evidence of damages incurred.**

Plaintiffs claim negligence by Defendant in "failing to review Plaintiffs' loan application and co-signor information." Am. Compl. 6. Alleging a claim of negligence, a plaintiff must prove four elements: (1) that the defendant owed a duty to protect the plaintiff from injury; (2) that the defendant breached the duty; (3) that the plaintiff suffered damages; and (4) that the plaintiff's

damages proximately resulted from the defendant's breach. *Hall v. Wash. Metro. Area Transit Auth.*, 679 F. Supp. 2d 629, 632 (D. Md. 2010) (citations omitted). "Negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do." *Oliver v. Maxway Stores*, No. WGC-12-3033, 2013 WL 6091844, at *3 (D. Md. Nov. 18, 2013) (citing *Maryland Civil Pattern Jury Instruction* 19:1). As Plaintiffs correctly point out, Maryland law has long established "a duty of reasonable care in the processing and determination of [a loan] application." *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 528 (1986).

Defendant owed Plaintiffs a duty of reasonable care in processing their loan application. *Jacques*, 307 Md. at 528. Defendant asserts that it is undisputed that "[Defendant] reviewed the application materials and denied the Plaintiffs' loan request in November 2015." ECF No. 34-1, p. 12. Plaintiffs remaining arguments regarding the standard of care relate to the July 2015 notice which was never received, and the November 2015 notice being sent to the wrong address. ECF No. 36-1, p. 6. It is unrebutted that Defendant's representative reviewed Plaintiffs' loan application and that said representative orally advised Mr. Sweat of Defendant's decision to deny Plaintiffs' loan request in July 2015. ECF No. 34-1, p. 4. However, when viewed in a light most favorable to the non-moving party, the Court is persuaded that it is for a trier of fact to determine whether Defendant's conduct breached the standard of care.

Having reviewed the record evidence, the Court is not persuaded that there is a dispute of material fact to present to a jury with regards to damages. Defendant addresses Plaintiffs alleged damages by denying that said damages were incurred as a result of Defendant's handling of Plaintiffs' loan application. ECF No. 34-1, p. 12. Accordingly, the burden shifts to Plaintiff to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at

324.  Plaintiffs counter Defendant's arguments with claims of lost revenues.  ECF No. 36-1, pp.

7-8.  However, the Court is unable to locate any admissible record evidence showing that

Plaintiffs would have received said revenue absent Defendant's actions.  Absent record expert

testimony supporting Plaintiffs' claim concerning the lost revenue, the Court is unwilling to

consider Plaintiffs' assertions as fact.  *See Tolbert v. Am. Sec. Programs, Inc.*, No. CIV. A.

WGC-13-2359, 2015 WL 1431550, at *7 (D. Md. Mar. 26, 2015) (requiring expert testimony in

a negligence case where "an issue is outside the realm of common knowledge and experience of

laymen").  In the absence of admissible evidence regarding damages, Plaintiffs cannot satisfy the

elements required to establish a claim of negligence.  Accordingly, summary judgment is

appropriate and the Court hereby grants Defendant's Motion as to Plaintiffs' second claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion.


September 7, 2018                                        _____/s/_____
                                                        Charles B. Day
                                                        United States Magistrate Judge


CBD/gbc